UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LISA FOSTER, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>SUN LIFE ASSURANCE COMPANY )<br>OF CANADA )<br>)<br>    Defendant ) | Civil Action Docket No.<br>1:09-cv-00131-JAW |

## JOINT STATEMENT OF MATERIAL FACTS

NOW COME the parties, by and through counsel, and submit the following Joint Statement of Material Facts.

Ms. Foster's Employment With New Balance And Insurance Coverage With Sun Life.

1.  Lisa Foster ("Ms. Foster") was hired by New Balance Athletic Shoe, Inc. ("New Balance") as a computerized stitcher on May 16, 2005. Administrative Record at 000076 [hereinafter "AR at [Page]"].

2.  Ms. Foster was insured by a policy of Short Term (STD) and Long Term (LTD) Disability Insurance provided by New Balance and underwritten by Sun Life Assurance Company of Canada ("Sun Life"). *See* AR 000391-000593.

3.  According to a "Job Description" New Balance provided to Sun Life in connection with Ms. Foster's disability claim, the duties and responsibilities for "Orisol Operator", included "working in process materials by assembling show [sic] parts on the pallet before engaging Orisol machine to stitch shoe uppers. Ensure the departmental quality and productivity standards are attained." AR at 000079.

4.  On February 1, 2007, Ms. Foster sought treatment from Dr. Keniston-Dubocq, her primary care physician, for evaluation of low back pain. The office note states "Pt. advised

{W1471788.1}

that there was no hint of a dangerous problem and that rapid recovery expected." Dr. Keniston-Dubocq "recommended aerobic activity . . . to avoid debilitation as tolerated within first 2 wks." AR at 000021- 000023.

Ms. Foster Applies For Short Term Disability Benefits.

5. Ms. Foster submitted a claim for Short Term Disability Benefits to Sun Life dated February 28, 2007. When asked to describe the nature of her injury Ms. Foster wrote "changed jobs/and was using my R leg pressed repeatly [sic] down on a petal [sic] causing severe pain." AR at 000009.

6. Dr. Keniston-Dubocq submitted an Attending Physician's Statement indicating that Ms. Foster had a "bulging disc" and needed a referral to neurosurgery. She stated that Ms. Foster should not be working more than 2 hours. AR at 000010-000011.

7. On March 20, 2007, Sun Life received a questionnaire completed by Dr. Keniston-Dubocq in which she indicated her belief that Ms. Foster's injury was work related as "she pressed the pedal for 8 hours a day." Dr. Keniston-Dubocq also indicates that it's her belief that there are no factors outside the workplace as, "she did not have the pain prior to this job – no other history of trauma." AR at 000017.

8. By letter dated March 23, 2007 Sun Life denied plaintiff's claim for short term disability benefits. In its letter Sun Life cited the policy provision that "No STD benefit will be payable for any Total Disability that is due to:…5. Injury of Sickness for which the Employee is entitled to benefits under any Workers' Compensation, Occupational Disease or similar law;" Sun Life further stated "You had indicated on your claim form that your condition was related to your occupation, citing specifically that the cause of your illness was from pressing on a foot pedal continuously for 8 hours per day. Your physician also indicted that symptoms that you had reported experiencing had been a result of your occupation." AR 000024- 000026.

9. On July 9, 2007 Sun Life received an undated note from Dr. Lee Thibodeau, M.D. The note states that Ms. Foster had a "severely degenerated disc between two vertebral bones" which was a "pre-existing condition . . ." He stated that her projected recovery to work full time was "around September of this year." AR at 000028.

10. On July 16, 2007 Sun Life received a letter from Ms. Foster stating that she wished to appeal the denial of short term disability benefits, on the grounds that her back injury was not work related but rather was a "pre-existing condition." AR at 000003; 000030.

11. On August 6, 2007 Sun Life referred the file to James Sarni, M.D. asking the following questions: "Please review the medical information in the file. Please advise what the diagnosis is? Please advise what medical evidence supports that diagnosis? Please be detailed in your answer. In your opinion, is her degenerated disc work related?" AR at 000049.

12. Dr. Sarni issued his response on August 24, 2007. Dr. Sarni stated that the medical information reviewed is relatively sparse, consisting of records of two office visits from Dr. Keniston-Dubocq and a letter from Dr. Thibodeau. Dr. Sarni opined that "…the radicular symptoms that the patient suffered from according to the history as indicated in the chart is work related. The pathology which became symptomatic when the insured was working at this occupation is not work related." AR at 000050-000053.

<u>Sun Life Awards STD Benefits And Begins LTD Analysis.</u>

13. On August 29, 2007, Sun Life overturned its decision to deny STD benefits, based on Dr. Sarni's opinion. AR at 000054. Sun Life informed Ms. Foster that it had referred her file to Sun Life's Long Term Disability Department. AR at 000055.

14. Sun Life informed Ms. Foster that it would "now thoroughly assess" her eligibility for LTD benefits and that Ms. Foster would need to arrange for the completion of various forms, that her physicians would need to submit medical records, and that she could be

asked to provide additional information. AR at 000056.

Sun Life's LTD Policy.

15. The Sun Life LTD policy defines "totally disabled" to mean "the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation." AR at 000409.

16. The LTD policy further states that in order "[t]o be eligible to receive a Net Monthly Benefit, the Employee must: . .

   2. provide proof of continued total or partial disability; . . .

Proof of Total or Partial Disability must be given to Sun Life upon request and at the Employee's expense." AR at 000432.

17. The LTD policy further states that "[p]roof of claim for disability must include evidence demonstrating the disability including, but not limited to, hospital records, physician records, psychiatric records, x-rays, narrative reports, or other diagnostic testing materials as appropriate for the disabling condition. . . Proof must be satisfactory to Sun Life . . . Proof of the Employee's continued disability and regular and continuous care by a Physician must be given to Sun Life within 30 days of the request for proof." AR at 000450.

18. The Sun Life LTD Policy also states as follows:

> The Plan Administrator has delegated to Sun Life its entire discretionary authority to make all final determinations regarding claims for benefits under the benefit plan insured by this Policy. This discretionary authority includes, but is not limited to, the determination of eligibility for benefits, based upon enrollment information provided by the Policyholder, and the amount of any benefits due, and to construe the terms of this Policy.
>
> Any decision made by Sun Life in the exercise of this authority, including review of denials of benefit, is conclusive and binding on all parties. Any court reviewing Sun Life's determinations shall uphold such determination unless the claimant proves Sun Life's determinations are arbitrary and capricious.

Sun Life Gathers Information To Adjudicate Ms. Foster's LTD Claim.

19. Ms. Foster submitted an Employee's Statement dated September 14, 2007. When asked to describe the nature of her illness/condition she stated "R leg pain traveling up and down leg." She also indicated that she has been unable to work since January 29, 2007. She listed Dr. Thibodeau as her treating physician. AR at 000064.

20. Dr. Thibodeau provided Sun Life with an Attending Physician's Statement dated August 30, 2007. Dr. Thibodeau listed his diagnosis as "degenerative disc between two vertebral bones causing a slippage of the spine bones, causing severe pain." AR at 000071. Dr. Thibodeau stated that surgery was performed (L-5-S1 decompression) on May 22, 2007. *Id.* He stated that the treatment plan was to be seen in the office every three months for evaluation and x-rays. *Id.*

21. Dr. Thibodeau's APS further stated that Ms. Foster could continuously reach above shoulder level, that she could frequently drive sit and stand, that she could occasionally walk, bend squat, twist, lift over 15 pounds and carry over eight pounds, and that her ability to climb, push, pull balance, kneel and crawl, was negligible. *Id.* Dr. Thibodeau stated that Ms. Foster was capable of working within those restrictions/limitations and that she had a sedentary capacity. *Id.* at 000072.

22. Sun Life wrote to Ms. Foster by letter dated September 18, 2007, advising that it had received certain information but was still waiting to receive the employer's section of the claim package and payroll records. AR at 000087. The letter further advised Ms. Foster of the time periods in which Sun Life would render a determination on her claim. *Id.*

23. Sun Life claims representative Penny Newton conducted a telephone interview with Ms. Foster on September 19, 2007. AR at 000089. Ms. Foster explained her treatment and described her daily activities. She stated that in terms of return to work, standing all day

would be difficult for her, but that she had called New Balance to "check to see what she needed to do to come back to work." *Id.*

24. Sun Life sent a request to Dr. Thibodeau for medical records on September 19, 2007. AR at 000091.

25. On September 24, 2007 Sun Life received a letter dated September 18, 2007 from the Department of Insurance. AR at 000100. The letter stated that Ms. Foster had complained about "extensive delay" in obtaining STD benefits and "further claims payment delays on her claim for LTD benefits." AR at 000100.

26. Having received no response to its initial request, Sun Life sent a second request to Dr. Thibodeau for medical records on September 28, 2007.

27. Dr. Thibodeau's office responded by fax dated September 28, 2007, and provided office notes reflecting Ms. Foster's treatment. Those notes are summarized below as follows:

    1. March 20, 2007: Dr. Pier examined Ms. Foster and stated that she "seems to certainly complain of radicular type symptoms. Her MRI does show several abnormalities. . . Per her MRI it is likely that she is still pinching the S1 nerve, with resultant leg pain." Dr. Pier recommended further conservative measures, followed by possible steroid injection, and surgical decompression if necessary. AR at 000128.

    2. April 5, 2007: Dr. Pier provided Ms. Foster with an epidural steroid injection. He stated that "if she progresses with pain or develops numbness or weakness, consideration could be turned to definitive neurosurgical intervention." AR at 000125.

    3. May 7, 2007: Dr. Thibodeau stated that Ms. Foster had "failed non-surgical management" and that "clearly the L5-S1 area needs to be decompressed and

fused." AR at 000123.

4. May 22, 2007: Mercy Hospital discharge summary for lumbar fusion procedure. "She tolerated the procedure well and was taken to recovery in satisfactory condition." AR at 000116

5. June 28, 2007: Dr. Thibodeau stated that he was "delighted to report that she is doing very well. Her preoperative leg pain has been diminished by about 70% and her preoperative low back pain has been diminished by about 50%. . . She would like very much to return to work, but at this point I think she needs more reconditioning. Unfortunately, the New Balance factory at Norridgewock does not accept part-time return to work activity. This is unfortunate . . ." AR at 000115.

6. September 24, 2007: Dr. Thibodeau noted "on her exam today, there is no weakness or numbness. Her incision is well healed. There is no evidence of infection…At this point, Lisa is obviously better in terms of leg pain, but continues to have what I think is functional back pain." Dr. Thibodeau further stated that "[a]t this point she would be able to comply with a part-time, light duty position. However, apparently New Balance does not offer this. This is unfortunate because she could and will rebuild herself into a valuable employee. I suspect that with exercise and proper posture as described above, she will be able to return to work." AR at 000111.

28. On October 4, 2007 Sun Life medical consultant Christine Entrekin, R.N. reviewed the file and concluded that the medical information on file "does support the R & L's as noted in the last office visit described as light duty part time as a transitional form of activity in preparation for full time medium level duties." Ms. Entrekin recommended further follow up towards the end of November to reassess. AR at 000061.

29. Also by letter dated October 4, 2007, Sun Life responded to the inquiry from the

Department of Insurance, and laid out the history of its adjudication of Ms. Foster's claim. AR at 000130.

Sun Life Awards LTD Benefits And Continues To Gather Information.

30. By letter dated October 4, 2007, Sun Life informed Ms. Foster that it had approved her claim for LTD benefits. Sun Life informed Ms. Foster that it would continue to require ongoing proof of claim going forward. AR at 000131-000132.

31. On October 22, 2007 Sun Life received a letter dated October 19, 2007 from the Department of Insurance, stating that it has "closed our file." AR at 000134.

32. On December 17, 2007 Ms. Newton called Ms. Foster to see how she was progressing and when she was next scheduled to see Dr. Thibodeau. Ms. Newton's claim note states that the "phone rang many times then someone hung up." AR at 000060.

33. On December 17, 2007, Ms. Newton wrote to Ms. Foster asking that she call to discuss her claim. AR at 000138.

34. As of January 14, 2008, Ms. Foster had not returned Ms. Newton's call. Ms. Newton tried calling her again and received no answer and no answering machine. AR at 000060.

35. On March 26, 2008 Sun Life faxed a request to Dr. Thibodeau for an APS and updated treatment notes and test results from 9/07 to present. AR at 000141.

36. Cathy of Dr. Thibodeau's office responded to the Fax on March 31, 2008. She stated "Statement will be forwarded for completion & sent separately if we can do it. Pt. hasn't been seen since 9/07 & there aren't any upcoming appts. set up." AR at 000144.

37. Ms. Newton spoke with Ms. Foster on April 1, 2008. Ms. Foster stated that she had "ended PT in January 08." Ms. Newton stated that she was waiting for a response from Dr. Thibodeau and would get "back in touch with her" once received. AR at 000059. Ms. Newton

also stated that she would "obtain PT records." *Id.*

38. Later on April 1, 2008 Ms. Newton called Rehab Works in Skowhegan in an attempt to obtain physical therapy records. The secretary would not provide any information "due to hippa." AR at 000059.

39. Ms. Newton called Ms. Foster again on April 1, 2008, and advised her that the number she had provided for the physical therapy center was incorrect. Ms. Foster "told me to look up the number." AR at 000059.

40. On April 1, 2008, Ms. Newton wrote to Ms. Foster requesting that she submit "copies of all medical records to include treatment notes, test results and physical therapy notes beyond September 2007." The letter further stated, "As you know, your policy requires that you provide adequate proof of loss to Sun Life at our request. As stated in your contract: "*Proof of the Employee's continued disability and regular and continuous care by a Physician must be given to Sun Life within 30 days of the request for proof.*" AR at 000148.

41. On April 4, 2008 Ms. Newton received a voice mail message from Nancy in Dr. Thibodeau's office "advising that patient has not been seen since 9/07." Ms. Newton called her back and left a voice mail asking that she return the call and "maybe she could help me understand why the patient is still out of work." AR at 000058.

42. On April 8, 2008 Nancy of Dr. Thibodeau's office returned Ms. Newton's call and left a message. Ms. Newton in turn returned the call and left a message. AR at 000058.

43. By letter dated April 4, 2008, received on April 10, 2008, Dr. Thibodeau advised Sun Life that "at current time, I have no physical restrictions on her regarding this surgery. She may work full time, full duty with no restrictions." AR at 000150.

<u>Sun Life Terminates Benefits.</u>

44. Penny Newton called Ms. Foster on April 10, 2008 to advise her to disregard her letter of 4/1/08, as she was "able to speak with Dr. Thibodeau's office and they faxed me narrative advising that they have not seen you since 9/07 and you are capable of full time full duty rtw with no R&L, I advised her that although we have paid her through today and she was released for work in 9/07 we would not be requesting repayment at this time. Her claim is closed. She hung up on me." AR at 000058.

45. On April 10, 2008, Sun Life issued a letter to Ms. Foster terminating her claim for LTD Benefits. AR at 000152-000153.

46. In the letter, Ms. Newton stated that: "Dr. Thibodeau saw you on September 24, 2007 exam findings were as follows: 'there is no weakness or numbness. Her incision is well healed. There is no evidence of infection.'" Further Ms. Newton stated that she received a written narrative from Dr. Thibodeau dated April 4, 2008 indicating "that at the current time you have no physical restrictions regarding your surgery and that you may return to work full time, full duty with no restrictions." Ms. Newton informed Ms. Foster that "as a result, we have determined that you do not satisfy the policy definition of total disability as quoted above. Consequently, you do not qualify for ongoing Long-Term Disability benefits and have closed the handling of your claim. If you disagree with our decision, you may request in writing a review of the denial within 180 days after receiving this notice of denial. *Along with your request you should send all pertinent medical information which would substantiate your inability to perform your occupation*. . . You may have the right to bring a civil action under the Employee Retirement Income Security Act of 1974 (ERISA), § 502 (a) following an adverse determination on review." AR at 000152-000153 (emphasis added).

47. On May 9, 2008, Sun Life received a fax from Sebasticook Family Doctors

enclosing physical therapy records. AR at 000156-000166. The fax contained records from March 2007, May, 2007, August 2007 and April, 2008, some of which Sun Life had already reviewed. *See* AR at 58, 000156-000166. Of those records not already received, were the following records:

    1.    October 1, 2007 physical therapy record: The record states that "patient presents with low back pain s/p fusion most likely due to lumbar instability. She demonstrates poor core stabilizer muscles." AR at 000165.

    2.    April 16, 2008 physical therapy record: The record notes that with respect to ADL's "she is currently independent with moderate restrictions." AR at 000158.

    3.    April 23, 2008 physical therapy record: "Patient tolerated all exercises well, reporting decrease of stiffness post therapy session." AR at 000157.

48. Upon receipt of these records Ms. Newton called Ms. Foster and left a message "for [return] call to ask if she wishes to appeal and if so she would need to write a letter to me stating that. Await clmt's call back." AR at 000058.

49. On May 28, 2008 Ms. Foster contacted Sun Life to "check . . . on her appeal." Ms. Newton called Ms. Foster and advised that Sun Life had not received a written request for an appeal and that Ms. Foster need to provide such a written request. AR at 000058.

Ms. Foster Appeals.

50. On May 28, 2008 Ms. Newton received Ms. Foster's written request for appeal (which was dated May 2, 2008). Ms. Foster's letter stated that "Dr. Thibodeau informed you I was 100% able to return to my current job with know [sic] restrictions, he told my husband and me the opposite. In September when I saw Doctor Thibodeau he had told me since he only fixed one problem in my back and since I still needed another surgery I couldn't return to my

current job." She also stated "I will be sending reports from my primary doctor. She has set me up for an MRI, and she also wanted me too [sic] do physical therapy." Ms. Foster further stated: "I know that I'm not able to go back to my current employment, I still have chronic back and leg pain, and my lifestyle is definitely restricted." Ms. Newton forwarded the letter to the appeal unit. AR at 000171; AR at 000058.

51. By letter dated June 2, 2008, Sun Life Benefits Consultant Steven Leask wrote to Ms. Foster and asked her to confirm whether she was sending additional medical records. Mr. Leask specifically asked Ms. Foster to "please advise whether the records received on May 9, 2008 are the reports you referenced in your letter. Please note if you do not contact our office within 10 days of the date of this letter to advise otherwise, I will assume the records received on May 9, 2008 are the records you referenced and I will proceed with the appeal review based on the documentation contained in your file." AR at 000172. Ms. Foster did not respond to Mr. Leask's letter. *See* AR at 000057-000058.

52. At the request of Mr. Leask, an Occupational Analysis was completed on June 3, 2008 by Robert Violetta, MS, CRS, CDMS, LRC in which he found "the physical requirements described in the employer statement and job description above do comport largely with physical requirements typically characteristic of machine operation in production environments – i.e. medium exertion work (lifting, carrying, pushing, pulling 20-50 lbs. occasionally, 10-25 lbs. frequently with standing throughout the entire day, occasional walking and minimal to no sitting except on work breaks), occasional bending/stooping and kneeling and frequent reaching, handling and fingering. These would correspond to the physical requirements of Ms. Foster's occupation as well." AR at 000176-000179.

53. On July 7, 2008 Mr. Leask contacted Ms. Foster to discuss a "potential settlement with Ms. Foster after completion of the occupational analysis and prior to sending

the file for a medical review. The intent was to amicably resolve the file with a lump-sum settlement equal to the remaining own occupation period benefits that potentially could be payable. Ms. Foster indicated that she was not interested in this option and I advised her that I would proceed with the appeal review." AR at 000057.

54. On July 8, 2008, Mr. Leask forwarded the medical records to Behavioral Medical Interventions ("BMI") by overnight mail to complete a medical review. Mr. Leask asked that BMI "assign the file to an appropriately qualified physician to answer the following questions:

1. Please summarize the relevant medical history . . .

2. Based on all available medical documentation, do you agree with Dr. Thibodeau's statements in his letter of April 4, 2008. . . Please note any specific limitations and restrictions which would have been applicable in your opinion on or about the period of April 10, 2008. . .

3. Please note any other comments or observations gleaned from the available documentation which may assist Sun Life in understanding whether Ms. Foster was reasonably capable of returning to perform full time medium work after April 10, 2008."

55. On July 29, 2008 Sun Life received a file review from the doctor retained by BMI, Philippe Chemaly, D.O. (Board Certified Physical Medicine and Rehabilitation) dated July 22, 2008. AR at 000195; AR at 000057.

56. Dr. Chemaly stated that he had reviewed all of the available medical records and information. He opined that "it is my opinion that the claimant may return to work in a medium work capacity which involves exerting 20-50 lb. of force occasionally, and/or 10-25 lb. of force frequently, and/or greater than the negligible up to 10 lb. of force constantly to

move objects. Examination findings throughout the file have noted normal motor and sensory examination with fair range of motion of the lumbar spine." AR at 000197.

57. Dr. Chemaly further stated that "if there was significant pain upon testing on follow-up examinations performed by Dr. Thibodeau, they would have been documented in his reports as well as I don't feel he would have opined that the claimant may return to work without restrictions and limitations as he obviously did in his letter dated 4/4/08. In my opinion, if Dr. Thibodeau had been concerned about claimant experiencing significant pain with activities, it would have been reflected in the return to work with restrictions and limitations." AR at 000197.

58. On July 29, 2008, Sun Life received a letter from Ms. Foster dated July 10, 2008, attaching a medical record from John Pier, M.D. dated June 19, 2008. In the letter Ms. Foster stated, "I think you should know that we are seeking legal advice. I had told the lawyer that you wanted to settle with us, so you close out the case. And he was wondering why we would want to do that knowing that I'm intitled [sic] to my benefits." AR at 000057; AR at 000184.

Sun Life Upholds The Termination.

59. Sun Life upheld the termination by letter from Mr. Leask dated July 29, 2008. AR at 000199-000202.

60. In the letter to Ms. Foster, Mr. Leask reviewed Sun Life's receipt of Dr. Thibodeau's April 4, 2008 letter which stated that "'I have no physical restrictions on her regarding this surgery. She may work full time, full duty with no restrictions." Mr. Leask noted that "[p]ursuant to Dr. Thibodeau's ostensibly unequivocal statement concerning your physical restrictions, Sun Life determined that you were no longer disabled from performing the material and substantial duties of your own occupation . . .'" AR at 000199.

61. Mr. Leask's letter further stated that "on May 9, 2008, Sun Life received some additional medical records; however no letter of explanation was submitted concerning these records. Sun Life subsequently received your letter dated May 2, 2008 (received May 28, 2008) requesting an appeal of the claim determination. Your letter indicates your disagreement with Dr. Thibodeau's opinion concerning your ability to return to work and that you would submit additional supporting medical documentation from your 'primary doctor.' No additional records were received after this date and it was assumed the records received on May 9, 2008 were in fact the referenced records. We received no response from you." AR at 000199-000200.

62. Mr. Leask further described the results of the occupational analyses which found Ms. Foster's occupation to constitute "machine operation in production environments, *i.e.* medium work. . ." AR at 000200.

63. Mr. Leask further stated, "I contacted you after the completion of the occupational analysis to inquire about your interest in lump-sum settlement in order to attempt an amicable resolution to appeal…you indicated you were not interested in this alternative option of resolving the appeal and I informed you that Sun Life would proceed with a medical review of the file." AR at 000200.

64. Mr. Leask then reviewed the results of Dr. Chemaly's independent records review wherein Dr. Chemaly stated that "'it is my opinion that the claimant may return to work in a medium work capacity which involves exerting 20-50 lb. of force occasionally, and/or 10-25 lb. of force frequently, and/or greater than the negligible up to 10 lb. of force constantly to move objects.'" AR at 000200.

65. Mr. Leask also addressed Ms. Foster's July 10, 2008 letter and the additional note from Dr. Pier which "does not appear to provide any additional objective findings, which

would contradict the findings and opinions of Dr. Thibodeau and/or Dr. Chemalay." AR at 000201.

66.     The denial letter concluded that "based on all available documentation, including Dr. Thibodeau's statement and the opinions of Dr. Chemaly, there is no basis on which Sun Life can reasonably concluded [sic] that you are unable to the material and substantial duties of your own occupation as of the period beginning on our about April 10, 2008. Accordingly, you no longer satisfied the above-referenced definition of Total Disability and your claim for continued benefits was appropriately denied…All administrative remedies have been exhausted. You may have the right to bring a civil action under the Employee Retirement Income Security Act of 1974 (ERISA), §502(a)." AR at 000201-000202.

Ms. Foster's Counsel Attempts To Submit Additional Information.

67.     Five moths later, in December 2008, Ms. Foster, through counsel, wrote to Sun Life and attempted to submit additional documents. The letter stated that "this office has been retained for the purpose of initiating immediate litigation with regard to this matter. In advance of doing so, I have determined that one further effort may be appropriate here to obtain a more appropriate resolution of this matter." AR at 000203-000384.

68.     Sun Life received Mr. Van Dyke's letter on December 18, 2008. Mr. Leask's claims note of 12/19/08 states "received a letter dated 12/11/08 from attorney David Van Dyke. Mr. Van Dyke is submitting an appeal to the claim determination. I have advised Mr. Van Dyke that Ms. Foster's administrative remedies were exhausted upon completion of the appeal review and the administrative record is closed at this time. Mr. Van Dyke has been advised that his letter and attached documents will not be make [sic] part of the administrative record and there will be no additional review of the claim." AR at 000057.

69. By letter dated December 19, 2008, Mr. Leask advised Attorney Van Dyke that Ms. Foster's claim adjudication is governed by ERISA and that "Ms. Foster's administrative remedies have been exhausted and the record closed, your letter of December 11, 2008 and the attached documents will not be made part of the administrative record." AR at 000385-000386.

70. On or about January 6, 2009, Ms. Foster filed this lawsuit against Sun Life.

Dated:  July 17, 2009


Respectfully submitted,


| /s/ David J. Van Dyke | /s/ Byrne J. Decker |
|---|---|
| David J. Van Dyke, Esq. | Byrne J. Decker, Esq. |
| HORNBLOWER, LYNCH, RABASCO & VAN DYKE, P.A. | PIERCE ATWOOD LLP |
| 261 Ash Street | One Monument Square |
| Lewiston, ME  04243-0116 | Portland, ME  04101 |
| (207) 786-6641 | (207) 791-1100 |
| dvandyke@gwi.net | bdecker@pierceatwood.com |
| Attorney for Plaintiff | Attorney for Defendant |

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**CERTIFICATE OF SERVICE**

      I, Byrne J. Decker, Esq., counsel for Defendant hereby certify that I made service of the attached Joint Statement of Material Facts to be served on counsel of record by electronically filing said document with the Court's ECF system, which will effect service on all registered participants:

David J. Van Dyke, Esquire
Bar No. 7227
Hornblower Lynch Rabasco & Van Dyke P.A.
261 Ash Street
P.O. Box 116
Lewiston, ME  04243-0116


Dated:  July 17, 2009                      /s/  Byrne J. Decker
                                                                Byrne J. Decker
                                                                Pierce Atwood LLP
                                                                One Monument Square
                                                                Portland, ME  04101
                                                                (207) 791-1100
                                                                bdecker@pierceatwood.com

                                                               *Attorneys for Defendant Sun Life Assurance*
                                                               *Company of Canada*