UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

LISA FOSTER,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )            09-CV-131-B-W
                                      )
SUN LIFE ASSURANCE COMPANY            )
OF CANADA,                            )
                                      )
            Defendant                 )

RECOMMENDED DECISION ON CROSS MOTIONS FOR
JUDGMENT ON ADMINISTATIVE RECORD

Lisa Foster obtained disability benefits under an employee benefit plan administered and underwritten by Sun Life Assurance Company of Canada. Her work duties, which required medium-intensity exertion in a standing position throughout the day, aggravated a degenerative spinal condition, resulting in a surgical procedure known as a lumbar fusion. Eleven months post-surgery Sun Life stopped making benefit payments based on Ms. Foster's failure to update her records to establish a continuing disability. During the ensuing administrative appeal process, Ms. Foster was afforded an opportunity to supplement the record and did so. Her appeal was denied, but her supplemental materials (to date) were incorporated into the record. She brought suit and requests that the benefits decision be overturned. Now pending are cross motions for judgment on the administrative record. The Court referred the motions for report and recommendation. Based on my review of the records and the final administrative decision rendered by Sun Life, I recommend that the Court grant Ms. Foster's motion, deny Sun Life's motion, and remand for further administrative proceedings.

## FACTS

The parties have submitted a joint statement of material facts that contains virtually all of the facts pertinent to the parties' dispute.  I have reviewed those portions of the administrative record cited in the joint statement and have fleshed out the statement in certain respects based on that review.  I have not reviewed the "disputed material" submitted by Ms. Foster's counsel beginning in December of 2008 (Admin. R. at 203-290).  The following facts are material to my recommendation.

Lisa Foster was hired by New Balance Athletic Shoe, Inc., as a computerized stitcher on May 16, 2005.  (Joint Statement of Material Facts ¶ 1, Doc. No. 25.)  Pursuant to her employment agreement, Ms. Foster obtained both short-term disability (STD) insurance and long-term disability (LTD) insurance underwritten by Sun Life Assurance Company of Canada. (Id. ¶ 2.)  On February 1, 2007, Ms. Foster sought treatment from Dr. Keniston-Dubocq, her primary care physician, for evaluation of lower back pain.  (Id. ¶ 4.)  Ms. Foster submitted a claim for STD benefits to Sun Life dated February 28, 2007.   Initially, Sun Life denied the claim because both Ms. Foster and Dr. Keniston-Dubocq made statements suggesting that the disability was work related, and the benefit in question was not available for injuries covered by workers' compensation and similar laws.  (Id. ¶¶ 5-8.)  However, on July 9, 2007, Sun Life received a note from Dr. Lee Thibodeau, M.D., a neurosurgeon to whom Ms. Foster had been referred.  Dr. Thibodeau's note indicated that Ms. Foster had a "severely degenerated disc between two vertebral bones" that was a pre-existing condition aggravated by, but not caused by, her work. Dr. Thibodeau indicated that Ms. Foster's projected recovery to full-time work would be "around September" of 2007.  (Id. ¶ 9.)

2

Ms. Foster appealed the denial of her benefits and, after referring the matter for professional review, Sun Life overturned its denial of benefits based on a determination that Ms. Foster's pathology was not work related, even if her pain symptoms were. (Id. ¶¶ 10-13.) Sun Life eventually reached this decision on August 29, 2007. (Id. ¶ 13.) Meanwhile, Ms. Foster had undergone lumbar fusion surgery on May 22, 2007. (Id. ¶ 27(4).) At the time when this surgery was recommended to Ms. Foster, the neurosurgeon who was treating her recognized that the L5-S1 joint to be fused was not the only location on the spine that might need attention: "The major question in this situation is whether or not we should surgically address the black disk at 4-5. In my conservative opinion, I think we should not address that at this time even though the patient understands further surgery in the future may be necessary there." (Admin. R. at 123, cited in Joint Statement ¶ 27(3).)

In connection with its decision to award STD benefits, Sun Life informed Ms. Foster that it would proceed to consider her eligibility for LTD benefits and told Ms. Foster that she would need to arrange for the completion of various forms, that her physicians would need to submit medical records, and that she could be asked to provide additional information. (Joint Statement ¶¶ 13-14.)

Under the LTD policy, an insured would qualify for a monthly benefit if unable to perform the material and substantial duties of her "own occupation" due to total or partial disability. (Id. ¶ 15.) According to the LTD policy, acquisition of benefits required proof of continued total or partial disability, which proof was to be given to Sun Life upon request and at the employee's expense. (Id. ¶ 16.) According to the policy:

> Proof of claim for disability must include evidence demonstrating the disability
> including, but not limited to, hospital records, physician records, psychiatric
> records, x-rays, narrative reports, or other diagnostic testing materials as

> appropriate for the disabling condition. . . . Proof of the Employee's continued
> disability and regular and continuous care by a Physician must be given to Sun
> Life within 30 days of the request for proof.

(Id. ¶ 17.)  Discretionary authority to determine claims and construe the language of the policy

resided in Sun Life.  (Id. ¶ 18.)

      Ms. Foster's "own occupation" was "Orisol operator."  The Orisol machine is used in

shoe production and the operator assembles shoe components that are then stitched together by

the machine.  (Id. ¶ 3.)  The operator stands throughout her shift and New Balance does not offer

a part-time position.  (Id. ¶¶ 23, 27(5), 52.)

      By September 2007, Ms. Foster had submitted an Employee's Statement and an

Attending Physician's Statement in support of her LTD claim.  Ms. Foster described her

condition as pain traveling up and down her right leg.  Dr. Thibodeau provided the physician's

statement and he indicated his diagnosis as "degenerative disc between two vertebral bones

causing a slippage of the spine bones, causing severe pain."  He also indicated that surgery was

performed (L-5-S1 decompression) on May 22, 2007, and that the treatment plan was to see Ms.

Foster every three months for evaluation and x-rays.  (Id. ¶¶ 19-20.)  Dr. Thibodeau also

provided some description of Ms. Foster's capacity, indicating, among other things, that she was

capable of working within certain restrictions and with only a sedentary capacity.  (Id. ¶ 21.)

The requirement of prolonged standing was a principle obstacle to returning to her job at New

Balance.  (Id. ¶ 23.)

      Sun Life eventually awarded LTD benefits in October of 2007, after receiving medical

records from Dr. Thibodeau's office on September 28, 2007, after making two requests for

records.  (<u>Id.</u> ¶¶ 24, 26, 27.)[1]  However, Dr. Thibodeau's treatment notes for June 28, 2007, and

September 24, 2007, indicated that the results of the lumbar fusion were successful in reducing

leg and back pain and that the prognosis for returning to work was good, following a period of

reconditioning.  (<u>Id.</u> ¶ 27.)  In particular, the September note indicated that Ms. Foster could

resume part-time work if New Balance would accommodate a part-time, light-duty position.

(<u>Id.</u>)

On October 4, 2007, Sun Life approved Ms. Foster's claim, but one of its medical

consultants, Christine Entrekin, R.N., recommended further follow up towards the end of

November to reassess.  Sun Life informed Ms. Foster that it would continue to require ongoing

proof of claim going forward.  (<u>Id.</u> ¶¶ 29-30.)  That follow up was later initiated by Sun Life

claims representative Penny Newton.

In mid-December of 2007 Ms. Newton called and wrote to Ms. Foster to see how she was

progressing and when she was next scheduled to see Dr. Thibodeau.  (<u>Id.</u> ¶¶ 23, 32-33.)  Ms.

Newton's attempts, including a call on January 14, 2008, were unsuccessful in eliciting a

response from Ms. Foster.  (<u>Id.</u> ¶ 34.)  By late March, Sun Life directed a fax to Dr. Thibodeau's

office requesting a new Attending Physician's Statement and updated treatment notes from

September 2007 through the present.  (<u>Id.</u> ¶ 35.)  On March 31, 2008, Ms. Newton received word

from Dr. Thibodeau's office that Ms. Foster had not been seen since September and did not have

any appointment scheduled at that time.  (<u>Id.</u> ¶ 36.)  When Ms. Newton later reached Ms. Foster

by phone on April 1, 2008, Ms. Foster stated that she had ended physical therapy in January.  (<u>Id.</u>

¶ 37.)

---

[1]    The delay in commencement of Ms. Foster's benefits under both the STD plan and the LTD plan was the
subject of a complaint made by Ms. Foster to the Maine Department of Insurance.  (<u>Id.</u> ¶ 25.)  The Department of
Insurance closed its file in October 2008 after LTD benefits commenced.  (<u>Id.</u> ¶ 31.)

On April 1, 2008, Ms. Newton wrote to Ms. Foster requesting "copies of all medical records to include treatment notes, test results and physical therapy notes beyond September 2007." Ms. Newton's letter included a reminder that the policy required Ms. Foster to provide adequate proof of loss at Sun Life's request and that proof included proof of continued disability and regular and continuous care by a physician, to be given within 30 days of a request for proof. (Id. ¶ 40.)

On April 10, Ms. Newton received a letter from Dr. Thibodeau advising: "At current time, I have no physical restrictions on her regarding this surgery. She may work full time, full duty with no restrictions." (Id. ¶ 43.) The prior week, however, Ms. Newton had received a phone message from staff in Dr. Thibodeau's office indicating that Ms. Foster had not been seen in the office since September 2007. (Id. ¶ 41.) Based on the letter from Dr. Thibodeau, Ms. Newton called Ms. Foster that day and told her that her claim was closed due to Dr. Thibodeau's indication that he had not seen her since September 2007 and that she was capable of full time duty. (Id. ¶ 44.) Ms. Foster hung up on Ms. Newton. (Id.) Sun Life issued a letter terminating Ms. Foster's claim that same day. (Id. ¶ 45.) The letter also indicated that Dr. Thibodeau's letter called for the termination of benefits. It also included advice that Ms. Foster could request a review of the decision in writing within 180 days and that the request should include pertinent medical information. (Id. ¶ 46.)

Meanwhile, on May 9, 2008, Sun Life received a fax from Sebasticook Family Doctors enclosing physical therapy records. Records for April 2008 indicated that Ms. Foster was "currently independent with moderate restrictions" and "tolerated all exercises well, reporting decrease of stiffness post therapy session." (Id. ¶ 47.) On May 28, 2008, Ms. Foster contacted Sun Life to "check . . . on her appeal." Ms. Newton called Ms. Foster and advised that Sun Life

had not received a written request for an appeal and that Ms. Foster need to provide such a written request. (Id. ¶ 49.) On May 28, 2008, Ms. Foster submitted a written request for appeal in which she stated that Dr. Thibodeau told her that she was not without restrictions and would need another surgery. Ms. Foster also stated that she would send reports from her primary doctor, who had set her up for a MRI and wanted her to continue physical therapy. Ms. Newton forwarded this correspondence to Sun Life's "appeal unit." (Id. ¶ 50.)

By letter dated June 2, 2008, Sun Life Benefits Consultant Steven Leask wrote to Ms. Foster and asked her to confirm whether she was sending additional medical records. Mr. Leask specifically asked Ms. Foster to advise whether the records received from Sebasticook Family Doctors on May 9, 2008, were the reports she referenced in her appeal letter. He warned that he would assume that they were if she did not let him know otherwise within 10 days of the date of his letter and would proceed with the appeal review based on that documentation. (Id. ¶ 51.) The next day, Mr. Leask obtained an occupational analysis from a Sun Life consultant, Robert Violetta, MS, CRS, CDMS, LRC, who found that the physical demands of Ms. Foster's computerized stitcher position were "typically characteristic of machine operation in production environments," including standing throughout the entire day and minimal to no sitting except on work breaks. (Id. ¶ 52.)

On July 7, 2008, Mr. Leask contacted Ms. Foster to suggest a settlement prior to sending her claim for medical review. He offered a lump-sum payment equal to the remaining period of the 24-month benefit available under the policy's "own occupation" standard in exchange for

closing her file.[2]  (Id. ¶ 53.)  Ms. Foster declined the offer and Mr. Leask referred the file to

Behavioral Medical Interventions (BMI) for a medical review.  (Id. ¶¶ 53-54.)

On July 8, Mr. Leask sent out a request to BMI to refer the file for a medical review from

an appropriately qualified physician who would answer, among other questions, whether he or

she agreed with Dr. Thibodeau's statements in his letter of April 4, 2008, whether any specific

limitations and restrictions would have been applicable in his opinion on or about April 10, 2008,

and whether other material in the file would assist in determining whether Ms. Foster was

reasonably capable of returning to full-time, medium-duty work after April 10, 2008.  (Id. ¶ 54.)

On July 29, 2008, Sun Life received a file review from Dr. Philippe Chemaly, D.O.

(Board Certified Physical Medicine and Rehabilitation), the physician retained by BMI.  (Id. ¶

55.)  Dr. Chemaly stated that he had reviewed all of the available medical records and

information and he opined that Ms. Foster could return to work in a medium work capacity

extending to the demands of her prior position with New Balance.  (Id. ¶ 56.)  Among other

things, Dr. Chemaly reasoned that Dr. Thibodeau would not have indicated that Ms. Foster could

return to work if she had indicated to Dr. Thibodeau in her post-surgery examinations that she

was continuing to suffer from significant pain.  (Id. ¶ 57.)

In his report, Dr. Chemaly responded to Mr. Leask's inquiry whether he believed, based

on all available medical documentation, that Ms. Foster would be capable of engaging in full-

time, medium-duty work as of April 10, 2008, and whether he could note any specific limitation

that he would have expected to apply at that time.  (Admin. R. at 197, cited in Joint Statement ¶¶

56-57.)  Dr. Chemaly opined that Ms. Foster could perform work at this intensity, in part,

---

[2]      To qualify for LTD benefits beyond the 24-month period, Ms. Foster would have to prove an inability to
perform any occupation, including a sedentary occupation, and not just an inability to perform a medium-duty
occupation.  (Admin. R. at 432.)

because there was "no documentation as to the requirement of pain medication." (Id.) Dr. Chemaly reiterated in a subsequent section of his report that the presence of significant pain is a material question and that it could justify restrictions preventing work at the intensity in question. (Id.)

While Dr. Chemaly was conducting his file review, Sun Life received a letter from Ms. Foster that attached a recent medical record from John Pier, M.D.[3] (Joint Statement ¶ 58.) The content of the medical record is not included in the joint statement, but the record is a part of the administrative record. The record relates to a June 19 consultation with Dr. Pier, who practices in physical medicine and rehabilitation in the same office as Dr. Thibodeau, the neurosurgeon who performed Ms. Foster's lumbar fusion. (Admin. R. at 186.[4]) The reason for the consultation was to evaluate Ms. Foster's ongoing lumbar back pain post fusion. (Id.) Dr. Pier related that Ms. Foster was reporting increasing back pain, sometimes extending to the right buttocks and upper thigh, described as having an intensity of 7-8 on a scale of 10. (Id.) In his assessment, Dr. Pier stated that Ms. Foster "does have primarily axial back pain" and recommended that she be prescribed pain management medication, a muscle relaxant, and an antidepressant, and that her chronic pain be managed in the primary care setting. (Id. at 190.) As for work, Dr. Pier observed that New Balance terminated Ms. Foster's employment and he recommended that she look for new work she might be interested in, noting that "[s]tanding in one spot is not likely going to be beneficial for her" and that "[w]orking on cement floors is another." (Id.)

---

[3]     The letter was actually faxed to Sun Life and the facsimile marking on the page indicates a receipt date of July 14, 2008. This would mean that Sun Life received the fax while Dr. Chemaly's file review was ongoing. The suggestion that the fax was received on July 29 is based on a "D-MAP" record maintained by Sun Life. That record indicates that Mr. Leask made a file entry concerning the letter from Ms. Foster on July 29, 2008, but it is apparent from a review of that entry that Mr. Leask did not always make file entries contemporaneously with new developments in the file.
[4]     Dr. Pier's consultation report is referenced in the joint statement at paragraph 58 and Mr. Leask quoted portions of it in his appeal determination (Admin. R. at 201).

Sun Life upheld the termination by letter from Mr. Leask dated July 29, 2008.  (Joint Statement ¶ 59.)  In his letter to Ms. Foster, Mr. Leask reviewed Sun Life's receipt of Dr. Thibodeau's April 4, 2008, letter that stated that he imposed no physical restrictions and that Ms. Foster could "work full time, full duty with no restrictions."  Mr. Leask explained:  "Pursuant to Dr. Thibodeau's ostensibly unequivocal statement concerning your physical restrictions, Sun Life determined that you were no longer disabled from performing the material and substantial duties of your own occupation . . ."  (Id. ¶ 60.)  Mr. Leask asserted that the physical therapy records received in May subsequent to Dr. Thibodeau's letter did not weigh against this conclusion.  (Id. ¶ 61.)  Mr. Leask reviewed the results of Dr. Chemaly's independent records review, including Dr. Chemaly's opinion that Ms. Foster could return to work in a job commensurate with her prior job at New Balance.  (Id. ¶ 64.)  Mr. Leask acknowledged receipt of the record related to Dr. Pier's July consultation, stating that it did not contain any additional objective findings that would contradict the findings and opinions of Dr. Thibodeau and/or Dr. Chemaly.  (Id. ¶ 65.)  Based on this assessment, Mr. Leask denied the appeal on the stated ground that Sun Life could not reasonably conclude that Ms. Foster was unable to perform the duties of her own occupation as of the period beginning April 10, 2008.  (Id. ¶ 66.)

In December of 2008, litigation counsel for Ms. Foster wrote Sun Life to say that litigation was imminent, but requested an opportunity to negotiate a resolution.  (Id. ¶ 67.)  Counsel's correspondence included updated medical records generated through November 2008.  (Admin. R. at 203-290 ("Disputed Material").)  Sun Life declined the offer and refused to reopen the administrative record, taking the position that "administrative remedies were exhausted upon completion of the appeal review."  (Joint Statement ¶¶ 68-69.)

10

On or about January 6, 2009, Ms. Foster filed a lawsuit against Sun Life in state court.

Sun Life removed the action to this Court on April 3, 2009, pursuant to the preemptive force of

the Employee Retirement Income Security Act of 1974.

### STANDARD OF REVIEW

It is undisputed that this action is governed by the Employee Retirement Income Security

Act (ERISA), 29 U.S.C. §§ 1001-1461, because Ms. Foster's disability benefits were provided

pursuant to an employee benefit plan.

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets
> forth a special standard of care upon a plan administrator, namely, that the
> administrator "discharge [its] duties" in respect to discretionary claims processing
> "solely in the interests of the participants and beneficiaries" of the plan, [20
> U.S.C.] § 1104(a)(1); it simultaneously underscores the particular importance of
> accurate claims processing by insisting that administrators "provide a 'full and fair
> review' of claim denials," Firestone [Tire & Rubber Co. v. Bruch], 489 U.S.
> [101], 113 [(1989)], (quoting § 1133(2)); and it supplements marketplace and
> regulatory controls with judicial review of individual claim denials, see §
> 1132(a)(1)(B).

Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2350 (2008).  The administrative record

establishes that the LTD policy in question delegated to Sun Life discretionary authority to

determine Ms. Foster's entitlement to benefits, which means that Sun Life's decision is entitled to

"deferential review."  Therefore, the decision should stand unless it can be said that Sun Life

abused the discretion it exercised as a fiduciary of the employee benefit plan through "arbitrary

and capricious" action.  Denmark v. Liberty Life Assur. Co., 566 F.3d 1, 9 (1st 2009).   An

arbitrary and capricious decision is one that is not reasoned or supported by "substantial"

evidence, meaning evidence sufficient to support a conclusion.  Stamp v. Metro. Life Ins. Co.,

531 F.3d 84, 87 (1st Cir. 2008).

The record also evinces a structural conflict of interest arising from the fact that Sun Life both determines claims under the policy in question and pays the claims when benefits are awarded. Because Sun Life's direct financial interest conflicts with its fiduciary obligations to plan participants, the Court must consider this conflict as a factor in its review. If the merits of the coverage question are in a state of balance, then it is within the Court's review authority to call the tie in favor of the runner due to the presence of this additional factor. Glenn, 128 S. Ct. at 2351. If the record evinces arbitrariness or actual bias in the administrative decision-making process, such as an unreasonable or unsubstantiated explanation for the administrative decision, then this fact and the conflict factor will more than suffice to overturn the administrative decision. Denmark, 566 F.3d at 6-8.

### Discussion

Both parties seek judgment on the administrative record. Sun Life initially moved for judgment on August 17, 2009 (Doc. No. 26), and Ms. Foster filed a counter-motion on September 7, 2009 (Doc. No. 27), to which Sun Life replied on September 18, 2009 (Doc. No. 28). Sun Life explains its decision based on an understanding that Ms. Foster was suffering from a temporary disability for a period of time leading up to her lumbar fusion and for a transitional recovery period that followed. (Def.'s Mot. for J. at 7-8.) It notes that the records that supported benefits (Dr. Thibodeau's notes of June 2007 and September 2007) also predicted a good recovery. (Id.) Consequently, it explains, it expected Ms. Foster to support any claim for continuing benefits after a reasonable period of recovery, but was frustrated by Ms. Foster's lack of cooperation. Given this development, says Sun Life, it was reasonable to contact Dr. Thibodeau's office for information and to terminate Foster's benefits in reliance on Dr. Thibodeau's indication in April of 2008 that work restrictions were no longer in place. (Id. at 8.)

12

Ms. Foster, on the other hand, argues that reliance on Dr. Thibodeau's April 2008 letter was entirely unreasonable because Ms. Newton was informed that Dr. Thibodeau had not seen Ms. Foster in the office since September 2007 and the April 4 letter did not articulate any basis for his new opinion that Ms. Foster had full work capacity. (Pl.'s Cross Mot. for J. at 2, 4.) Additionally, she argues that the more reliable consultation note from Dr. Pier, dated June 19, 2008, "confirm[s] work-capacity limitations, including with regard to standing and working on cement floors." (Id. at 5.) She also observes that the independent review by Dr. Chemaly did not take into consideration this most recent consultation note from June 19 (Dr. Chemaly's review was based on a record compiled prior to Sun Life's receipt of Dr. Pier's consultation note). (Id.)[5]

Under ERISA, a claimant is not entitled to a *de novo* assessment of her claim when the policy bestows discretionary authority on the plan administrator to make benefit determinations. Instead, the administrative decision will be upheld so long as it is reasoned and supported by evidence sufficient to support a conclusion. Stamp, 531 F.3d at 87. Consequently, Ms. Foster may be denied benefits so long as a reasonable assessment of the administrative record supports a conclusion that she failed to prove the existence of a condition that disabled her from performing her prior occupation.

Based on my review of the administrative record, I conclude that it was not unreasonable for Ms. Newton to suspend Ms. Foster's benefits following her receipt of a declarative statement from Dr. Thibodeau that Ms. Foster could work "full time, full duty with no restrictions." With

---

[5]     Ms. Foster also argues that there is a shifting burden of persuasion. (Pl.'s Counter-Mot. for J. at 6.) Her citations support the opposite conclusion. Morales-Alejandro v. Med. Card Sys., 486 F.3d 693, 700 (1st Cir. 2007) ("A claimant seeking disability benefits bears the burden of providing evidence that he is disabled within the plan's definition."); Leahy v. Raytheon Co., 315 F.3d 11, 20 (1st Cir. 2002) (contrasting the burden-shifting approach of the Supplemental Security Income scheme with the ERISA scheme, which lacks such an approach).

respect to Ms. Newton's claims handling, the record does not depict a follow-up investigation that was commenced prematurely. Dr. Thibodeau's post-operative consultation report in September of 2007 indicated improvements with respect to pain and a positive prognosis for returning to work. In this light, Sun Life's decision to follow up with Ms. Foster in December of 2007 was not unreasonable. Given this passage of time and Ms. Foster's failure to update the evidentiary record with any reports or other supportive records from the treating surgeon, the primary care physician, or the physical therapist(s), I cannot find that it was manifestly unreasonable for Ms. Newton to conclude from Dr. Thibodeau's April letter that a suspension of benefits was appropriate at that time. However, although her benefit payments were fairly suspended, time had not run out for Ms. Foster. She was told she would have 180 days to process an appeal and that she could supplement the record with additional evidence. Within that time frame, while Sun Life was itself supplementing the record and extending the timeframe for decision, Ms. Foster supplied Mr. Leask with an updated consultation report from Dr. Thibodeau's fellow practitioner, Dr. Pier, which report was clearly superior to Dr. Thibodeau's April letter for purposes of making a benefit determination because it was actually based on a consultation, whereas Dr. Thibodeau's April letter was not. Dr. Pier's consultation notes reflect that pain management through medication would be needed in order for Ms. Foster to perform normal family household activity without experiencing pain and that work requiring Ms. Foster to stand in one spot would not be beneficial for her. This assessment dovetails with Dr. Chemaly's own indication that the presence of significant pain and a need for pain management is a factor material to the question of whether Ms. Foster could resume work at the level demanded by her prior occupation. Based on this evidence, I conclude that Mr. Leask's administrative assessment that Dr. Pier's consultation did not reflect objective findings that

14

would contradict the findings and opinions of Dr. Thibodeau and Dr. Chemaly is an inaccurate characterization of the record that is not supported by substantial evidence. Given this evidentiary error and the existence of a structural conflict of interest I conclude that Ms. Foster has demonstrated an abuse of discretion that justifies relief.

I recommend that Ms. Foster's claim for LTD benefits be remanded for an assessment of whether the symptoms of pain associated with Ms. Foster's condition disabled her in respect to the performance of medium-duty work commensurate with full-time Orisol operation. The administrative record reflects that Mr. Leask engaged in a form of file choreography that, whether by design or inadvertence, unreasonably danced around the material question of how Ms. Foster's symptoms of chronic pain correspond to the disability determination. As to the appropriateness of the proposed remedy of remand, my view is that the record does not compel a finding of disability but does justify a more legitimate decision-making process, including an opportunity to introduce new evidence concerning the "own occupation" coverage terms. See Buffonge v. Prudential Ins. Co. of Am., 426 F.3d 20, 31-32 (1st Cir. 2005) (remanding for a new determination, including an opportunity to supplement the record).

### CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court GRANT Plaintiff's Counter-Motion for Judgment on the Administrative Record (Doc. No. 27) and DENY Defendant's Motion for Judgment on the Administrative Record (Doc. No. 26).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy

15

thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 7, 2009

16